IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WALDIMAR G. WITT, ) | |
| ) | Case No. CV04-0016-S-EJL |
| Plaintiff, ) | |
| ) | **MEMORANDUM ORDER** |
| vs. ) | |
| ) | |
| JANEL JENSON GARDNER; C/O ACOSTA; ) | |
| SGT. BLAKELY; - SAND, Unit Manager; ) | |
| - BURKE, Unit Manager; DHO JEPSON, ) | |
| - CONWAY, Head Warden, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

Pending before the Court is Defendants' Motion for Summary Judgment (Docket No. 39). The Court has determined that oral argument on the Motion is unnecessary. Having reviewed the pending motions, responses, and the record in this case, the Court enters the following Order.

**ORDER  1**

# I.

# MOTION FOR SUMMARY JUDGMENT

### A.     Standard of Law

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In a motion for summary judgment, the moving party bears the "initial burden of identifying for the court those portions of the record which demonstrate the absence of any genuine issues of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986)). If the moving party points to portions of the record demonstrating that there appears to be no genuine issue of material fact as to claims or defenses at issue, the burden of production shifts to the non-moving party. To meet its burden of production, the non-moving party "may not rest upon the mere allegations contained in his complaint, but he must set forth, by affidavits, exhibits or otherwise, specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56; *see T.W. Electric Serv.*, 809 F.2d at 630 (internal citation omitted).

The Court does not determine the credibility of affiants or weigh the evidence set

**ORDER  2**

forth by the non-moving party. All inferences that can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630-31 (internal citation omitted).

Rule 56(c) requires the Court to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. at 252.

**B.     Liberty Interest Claims**

    1.     <u>Standard of Law</u>

A prisoner may not bring a Fourteenth Amendment procedural due process claim unless he can first show that the deprivation of which he complains amounts to a state-created liberty interest. The "liberty interest" analysis set forth in *Sandin v. Conner,* 515 U.S. 472, 483-84 (1995), is implicated when a plaintiff asserts that he was denied the right to procedural due process prior to a specific punishment. In *Sandin*, the Supreme Court held that a state-created liberty interest is not protected by due process unless the type of restraint or punishment "imposes atypical and significant hardship on the inmate in relation to ordinary incidents of prison life." *Id.* In *Sandin*, the Court determined that the plaintiff had no liberty interest in avoiding disciplinary segregation by reviewing three factors: (1) disciplinary segregation was essentially the same as discretionary forms of

**ORDER  3**

segregation; (2) the plaintiff suffered no major disruption in his environment when confinement in segregation was compared to the general population; and (3) the length of his sentence was unaffected by the punishment.  *Sandin*, 515 U.S. at 486-87.

The *Sandin* Court determined that the plaintiff did not have a liberty interest in avoiding a disciplinary segregation term of 30 days.  *Id*. at 485-86.  The Court also provided two examples of atypical and significant hardships: (1) transfer to a mental hospital; and (2) involuntary administration of psychotropic mediation.  *Id*. at 484.  Based upon *Sandin*, the Ninth Circuit held that prehearing administrative segregation does not constitute an atypical and significant hardship because it "falls within the terms of confinement ordinarily contemplated by a sentence."  *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997), *cert. denied*, 522 U.S. 921 (1997).

    2.    <u>Discussion</u>

        *a.*    First DOR

Idaho Department of Correction Directive No. 402.02.01.001, § 05.03.00 requires that outgoing mail "be clearly marked with the sending inmate's name (no nicknames or titles), institutional number, the name of the facility, living unit, and address of facility." *See Exhibit B to Janel Gardner Affidavit*, at p. 25 (Docket No. 43).  Inmates are made aware of this requirement in the Inmate Handbook provided to each inmate:

> All mail (incoming and outgoing) will be clearly addressed as follows:
> 1. Inmate's full, given name
> 2. The facility number
> 3. Living POD and bed, facility address

**ORDER  4**

> 4. Outgoing mail must have "Inmate Correspondence" written in the lower left corner of the envelope.

*See id., Exhibit C*, at p. 30.

On April 14, 2003, Sergeant Watts brought Plaintiff a DOR for not writing his living quarters on the return address of his outgoing mail. The reporting employee was Defendant Gardener. Plaintiff refused to sign the DOR, and "requested that it be taken downtown as a traffic ticket." On May 5, 2003, Plaintiff received the DOR decision, noting that sanctions had been issued. He learned that the DOR hearing had been held on April 21, 2003. Plaintiff was not allowed to attend the hearing, call witnesses, or defend against the charges. *See Complaint*, at p. 3 (Docket No. 4).

Plaintiff received the following punishment for the DOR: (1) 15 days of segregation (suspended); (2) 30 days of commissary restriction; and (3) 30 extra hours of work duty. The DOR was also reduced from a Class A charge to a Class B charge, a less-serious classification. *See Defendants' Statement of Material Facts*, at ¶¶ 17 &18 (Docket No. 41).

Using the *Sandin* test, the Court concludes that nothing in the record shows that Plaintiff's punishment was an atypical and significant hardship relative to the ordinary incidents of prison life. The segregation time was suspended, and the other restrictions and requirements were not extraordinary. As a result, Plaintiff's liberty-interest due process claims fail against all Defendants.

      b.    *Second DOR*

**ORDER  5**

The second DOR arises from Plaintiff's failure to complete the extra work duty hours imposed by the April DOR by May 15, 2003. Defendant Acosta brought this to Plaintiff's attention, but Plaintiff contended that the April DOR was on appeal. *See Complaint*, at p. 3. At that time, Plaintiff had already received Warden Conway's denial of his appeal, but Plaintiff asserts that he meant he was "appealing the DOR to the downtown court system for it being illegal." *See Plaintiff's Response to Statement of Undisputed Facts*, at p. 4 (Docket No. 48-3). The present civil rights Complaint was not filed until January 12, 2004. *See Complaint*.

Defendant Blakely and Acosta checked on Plaintiff's contention about his appeal of the DOR, and learned that Warden Conway had already denied the appeal. As a result, on May 31, 2003, Defendant Acosta took Plaintiff into custody, served him with a new DOR for disobedience to orders, and placed him in pre-hearing segregation. Defendant Jepsen found Plaintiff guilty of the DOR charges after a hearing. Plaintiff received the following punishment: (1) 30 days in segregation (with 20 days suspended), and (2) 60 additional extra work duty hours. *See Defendants' Statement of Undisputed Material Facts*, at ¶¶ 21-33 & ¶¶ 49-50.

**ORDER  6**

Again, Plaintiff has not shown that he had a liberty interest in avoiding being placed in segregation and receiving additional work duty hours. Because Plaintiff's punishment does not arise to the level of a liberty interest, his contentions regarding his legal advisor's failure to obtain witness statements is not actionable; neither are his other liberty-interest due process claims against the remaining Defendants actionable. As a result, these claims are subject to summary judgment.

**C.    Arbitrary and Capricious Claims**

   1.    Standard of Law

If an inmate is punished without reason, that punishment may amount to a Fourteenth Amendment violation of his substantive due process right to be free from arbitrary and capricious punishment. *See Burnsworth v. Gunderson*, 179 F.3d 771, 775 (9th Cir. 1999) (due process was violated when a prison disciplinary hearing board convicted an inmate of escape after that board held a hearing at which no shred of evidence of the inmate's guilt was presented, even if inmate demonstrated no cognizable liberty interest).

   2.    Discussion

      a.    *First DOR*

To prevail on his arbitrary and capricious due process claim, Plaintiff must show that he was convicted of the DOR even though "no shred of evidence" of his guilt was presented. In Plaintiff's case, it is undisputed that Plaintiff failed to place his inmate housing unit on the return address of his outgoing mail. Despite Plaintiff's attempts to

**ORDER 7**

argue that the terms "outgoing mail" and "all outgoing mail" do not include "legal mail," a plain reading of the Prison Directive and Inmate Handbook do not support such an interpretation. Plaintiff also argues that it is illegal or dangerous for prison officials to require him to follow the regulation. The Court finds such assertions to be without legal or factual basis. Plaintiff's statements from other inmates about incidents not related to Plaintiff are irrelevant to the issues in this case. *See Affidavits of Inmates* (Docket No. 48-4).

As a result of all of the foregoing, the Court concludes that Defendants did not act in an arbitrary and capricious manner in charging him with the first DOR, in finding him guilty of the first DOR, and in failing to take any supervisory actions regarding the employees who issued or found him guilty of the first DOR. All Defendants are entitled to summary judgment on these claims.

      b.      Second DOR

It is undisputed that Plaintiff failed to complete the extra work duty hours imposed by the first DOR. Plaintiff has brought forward no prison regulation allowing inmates to disregard extra work duty hour sanctions while they "appeal" their sanctions to the courts. Likewise, Plaintiff's argument that the written imposition of the sanctions was not an order to complete the extra duty hours is unavailing. Clearly, there is adequate evidence supporting imposition of the second DOR for Plaintiff's failure to comply with the sanctions imposed by the first DOR. As a result, Defendants did not act in an arbitrary and capricious manner in charging him with the second DOR, in finding him guilty of the

**ORDER  8**

second DOR, and in failing to take any supervisory actions regarding the employees who issued or found him guilty of the second DOR.  All Defendants are entitled to summary judgment on these claims.

**D.     Retaliation Claims**

    1.     Standard of Law

A retaliation claim must allege the following: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

    2.     Discussion

Based on the foregoing discussion, the Court concludes that Plaintiff has failed to state any facts supporting a retaliation claim.  Rather, it is clear that Defendants determined that Plaintiff had failed to comply with the sanctions imposed for the first DOR, and, therefore, a second DOR was warranted.  The second DOR was not retaliation, but a legitimate follow-up to the first imposition of sanctions.  It is clear that Defendants' actions reasonably advanced a legitimate correctional goal, because the

purpose of the sanctions would be destroyed if inmates could simply refuse to obey them, contending that they were "appealing" the sanctions to the courts.

Plaintiff also contends that the prison refused to accept for mailing his outgoing mail. He admits that the mail that was refused did not have his housing address on the envelope. *Plaintiff's Motion of Addition and Amendment*, at p. 2 (Docket No. 28). The Directive requiring all mail to be particularly identified has obvious institutional security and order purposes. Because prison officials' actions in refusing such mail had a legitimate correctional goal, Plaintiff's allegations do not support a retaliation claim.

Plaintiff also contends that the prison opened his mail. *Plaintiff's Response to Request for Summary Judgment*, at p. 3 (Docket No. 48-2). Plaintiff makes no connection between these particular Defendants and the prison's opening of his mail. Therefore, a retaliation claim against the named Defendants does not lie.

The Court also notes that Plaintiff attempted to add new retaliation claims that allegedly occurred in August 2004 to this case, but the Court denied the request as futile. *See Order of February 15, 2005* (Docket No. 38). As a result of all of the foregoing, Plaintiff's retaliation claims are subject to summary judgment.

### E.     Other Potential Defendants

Based upon all of the foregoing, the Court concludes that Plaintiff's assertions against potential or unserved defendants Alvarado, Young, Redus, and Blakely would fail

as well.  Therefore, Plaintiff suffered no prejudice as a result of not being able to proceed against these Defendants.

## II.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (Docket No. 39) is GRANTED.  Plaintiff's entire case is dismissed with prejudice.

DATED:  **January 5, 2006**

_____
Honorable Edward J. Lodge
U. S. District Judge

**ORDER  11**